**Honorable Thomas S. Zilly**

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ESTATE OF VERL A BRANTNER,<br><br>Plaintiff,<br><br>v.<br><br>OCWEN LOAN SERVICING, LLC, a Delaware limited liability company; and QBE INSURANCE CORPORATION, a Pennsylvania corporation,<br><br>Defendants. | No. 2:17-cv-00582-TSZ<br><br>**PLAINTIFF'S TRIAL BRIEF** |

## I. INTRODUCTION

COMES NOW plaintiff, ESTATE OF VERL A. BRANTNER ("Estate"), and hereby files its trial brief in advance of the trial scheduled to begin before this Court on Monday, October 29, 2018.

## II. FACTUAL BACKGROUND

In October 2011 Verl Brantner purchased a single family residence located in Arlington, Washington (the "Arlington residence") with a loan in the sum of $161,600.00 (hereinafter the "*Loan*").

At all relevant times, defendant, OCWEN LOAN SERVICING, LLC ("Ocwen"), serviced the *Loan*.

PLAINTIFF'S TRIAL BRIEF
No. 2:17-cv-00582-TSZ

Page 1

**Law Office of William E. Pierson, Jr. | PC**
The Delmar Building
108 S. Washington St., Suite 202
Seattle, WA 98104
Telephone: (206) 254-0915

In November 2013 Verl Branter passed away.

In December 2013 Ocwen secured force-placed insurance for the Arlington residence underwritten by defendant, QBE INSURANCE CORPORATION ("QBE"). The Estate was an additional named insured under QBE's policy.

On March 23, 2014 the Arlington residence was substantially damaged by a fire (the "fire").

Approximately three (3) months after the fire, on June 16, 2014, the attorney for the Estate, James Jameson, wrote Ocwen a letter and notified it of the fire. Mr. Jameson indicated he presumed the insurance proceeds from QBE's force-placed insurance policy had been paid to Ocwen as a result of the fire. Mr. Jameson requested Ocwen to provide the amount of any remaining balance on the *Loan*. Two weeks later, on July 1, 2014, Ocwen acknowledged receipt of Mr. Jameson's June 16, 2014 letter but never provided the information requested in Mr. Jameson's June 16, 2014 letter concerning the payment of insurance proceeds.

Eleven (11) months after the fire, on February 19, 2015, Mr. Jameson once again wrote Ocwen a letter and reiterated his assumption that Ocwen had received insurance proceeds for the damages done by the fire. He once again asked for an outstanding loan balance under the belief that the insurance proceeds should have been sufficient to pay off the *Loan* balance. Ocwen acknowledged receipt of Mr. Jameson's second letter a week later, on February 27, 2015, but never specifically responded to Mr. Jameson with regard to the disposition of insurance proceeds under the QBE policy.

A year and a half after the fire, on September 25, 2015, Ocwen received payment in the sum of $132,348.33 under QBE's policy for damages sustained by the Arlington residence as a result of the fire. However, it wasn't until almost 2½ years after the fire that Ocwen, on August 12, 2016, finally applied these insurance proceeds to the outstanding loan balance under the *Loan*.

PLAINTIFF'S TRIAL BRIEF
No. 2:17-cv-00582-TSZ

Page 2

**Law Office of William E. Pierson, Jr. | PC**
The Delmar Building
108 S. Washington St., Suite 202
Seattle, WA 98104
Telephone: (206) 254-0915

The force-placed insurance policy at issue in this lawsuit is not like regular homeowner's insurance. A homeowner's insurance policy insures the homeowner for the cost to repair the home and the extra expense (loss of use) incurred during repair. Force-placed insurance, on the other hand, is required by the lender to insure against the financial loss attributable to an unpaid loan balance. The purpose of force-placed insurance is to pay off all or part of the outstanding balance of a loan on a home in the event of damage to the home. As the names imply, homeowner's insurance is primarily for the benefit of the homeowner; force-placed insurance is primarily for the benefit of the lender. The force-placed insurance policy at issue in this lawsuit was taken out after the death of Mr. Branter primarily to protect Ocwen's security interest in the Arlington residence.

Ocwen attempts to absolve itself from any responsibility in this case by claiming it was the Estate's sole responsibility to file the requisite insurance claim on the force-placed insurance policy taken out to protect Ocwen's financial interest in the Arlington residence. The *Deed of Trust*[1] securing the *Loan* expressly states otherwise.

The *Loan* was insured by the Federal Housing Administration ("FHA")[2]. Under FHA guidelines applicable to the *Loan*, Ocwen was expected to take all appropriate action to ensure that the fire insurance claim at issue in this lawsuit was filed and settled as expeditiously as possible[3]. Ocwen does not dispute or otherwise attempt to controvert it had this duty under the FHA guidelines applicable to the *Loan*. Ocwen's own Rule 30(b)(6) representative, whose deposition this Court previously ordered (ECF No. 36),

---

[1] *Declaration of William E. Pierson, Jr.*, ¶7, Ex. E (07/09/2018).

[2] Dkt. #33, *Declaration of William E. Pierson, Jr.*, ¶10, Ex. C (05/02/2018).

[3] Dkt. #31, *Declaration of William E. Pierson, Jr.*, ¶4, Ex. C: *FHA Administration of Insured Home Mortgages Handbook* (Directive 4330.10), ¶9-10(E) (1)(Rev-5 9/94) "The Mortgagee is expected to take all appropriate action to recoup all available hazard insurance proceeds."; ¶6, Ex. D: *FHA Single Family Housing Policy Handbook* (Directive 4000.1), ¶III.A.1.h.iii(A)(3/14/2016) "The Mortgagee must take necessary steps to ensure hazard or flood insurance claims are filed and settled as expeditiously as possible." (04/27/2018);

PLAINTIFF'S TRIAL BRIEF
No. 2:17-cv-00582-TSZ

Page 3

**Law Office of William E. Pierson, Jr. | PC**
The Delmar Building
108 S. Washington St., Suite 202
Seattle, WA  98104
Telephone:    (206) 254-0915

has admitted Ocwen was under this duty in this case to take all appropriate action to ensure that the insurance claim was filed and settled as expeditiously as possible[4]. This duty is one of those "other standard servicer duties" referenced in 12 U.S.C. § 2605 (k)(1)(C). It is undisputed it took Ocwen 2½ years from the date of the fire to file and settle the fire insurance claim at issue in this lawsuit, which should have taken only three months[5]. This inaction on the part of Ocwen violated 12 U.S.C. §2605(k)(1)(C).

The Estate has never disputed that by the time the Estate's attorney wrote to Ocwen on June 16, 2014 to about the payment of insurance proceeds as a result of the fire, $8,895.81 was owed on the *Loan*[6]. The Estate claims that if the proper amount of insurance proceeds had been paid out by the time of Mr. Jameson's June 16, 2014 letter ($156,033.00), the Estate would have been able to pay off the entire *Loan* amount of $161,600.00, which the Estate was ready, willing and able to do as of June 16, 2014. Instead, after over 3 years of delay, Ocwen currently claims the Estate still owes more than $80,000.00 on the *Loan*.

### III. LEGAL AUTHORITY

The Estate asserts that Ocwen has violated various provisions of the Real Estate Settlement Procedures Act, 12 U.S.C. ¶2605 *et seq*. ("RESPA"), the Washington Consumer Loan Act, RCW 31.04 *et seq*. ("CLA"), and the Washington Consumer Protection Act, RCW 19.86 *et seq*. ("CPA"), and suffered financial losses as a result.

**A.  RESPA.**

In order to prove a claim for violation of RESPA, the plaintiff must show:
(1) A <u>borrower</u>;

---

[4] *Deposition of Kevin Flannigan*, p. 40, line 18 – p. 41, line 14 (07/24/2018)[*Declaration of William E. Pierson, Jr.*, ¶3, Ex. A (10/08/2018).]

[5] Dkt. #23: *Declaration of David A. Forte*, ¶¶26, 27(04/12/2018).

[6] Dkt. #23: *Declaration of David A. Forte*, ¶¶26, 27 (04/12/2018).

PLAINTIFF'S TRIAL BRIEF
No.  2:17-cv-00582-TSZ

Page 4

**Law Office of William E. Pierson, Jr. | PC**
The Delmar Building
108 S. Washington St., Suite 202
Seattle, WA  98104
Telephone:   (206) 254-0915

(2) Made a <u>request</u> to a <u>loan servicer</u> to correct an error relating to:
   a. allocation of payments,
   b. final balances for purposes of paying off a loan,
   c. avoiding foreclosures;
   d. or <u>other standard servicer's duties</u>.

(3) That the loan servicer failed to <u>respond</u> to such request within the time frame prescribed by RESPA;

(4) And the untimely response damaged the plaintiff.

12 U.S.C. §2605(k)(1)(C).

Under RESPA, a <u>borrower</u> is the named borrower on the *Loan* or the authorized agent of the borrower's estate if the borrower on the *Loan* has died. *Wilson v. Bank of America, N.A.*, 48 F.Supp.3d 787, 796 (E.D.Pa. 2014).

Under RESPA, a <u>loan servicer</u> means the person responsible for servicing a loan. 12 U.S.C. §2605(i)(2);(3).

Under RESPA, a request means:

> A written correspondence other than notice on a payment coupon or other payment medium supplied by the loan servicer, that –
>
> (i) Includes, or otherwise enables the loan servicer to identify the name and account of the borrower;
>
> (ii) Includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the loan servicer regarding other information sought by the borrower.

12 U.S.C. §2605(e)(1)(B)(i), (ii).

At all pertinent times at issue in this lawsuit, Jim Jameson was the attorney for the Estate of Verl Brantner[7]. Ocwen takes the position it did not have to respond to Mr. Jameson's June 16, 2014[8] letter because he does not qualify as a "borrower" for purposes of 12 U.S.C. §2605(k)(1)(C). Ocwen claims he was merely a "third party and non-borrower".

---

[7] *Declaration of James J. Jameson*, ¶4 (07/05/2018).

[8] *Id.*, ¶6, Ex. A (07/05/2018).

PLAINTIFF'S TRIAL BRIEF
No. 2:17-cv-00582-TSZ
Page 5
**Law Office of William E. Pierson, Jr. | PC**
The Delmar Building
108 S. Washington St., Suite 202
Seattle, WA 98104
Telephone: (206) 254-0915

This argument ignores estate and agency law in the State of Washington. When Verl Brantner died, the Arlington residence passed to his mother, Irene Brantner, as his sole heir, and all of the legal obligations imposed by the *Loan* and the corresponding *Deed of Trust* were transferred to the Estate by operation of law[9]. Thus, upon Verl Brantner's death, the Estate became the pertinent "borrower" for purposes of 12 U.S.C. §2605(k)(1)(C) by operation of state law. All of Mr. Jameson's contacts with Ocwen were as the attorney of record for the Estate. As the attorney of record for the Estate, Mr. Jameson had the requisite authority to act on the "borrower's" (the Estate's) behalf. *See e.g. Haller v. Wallis*, 89 Wn.2d 539, 547, 573 P.2d 1302 (1978); *Ha v. Signal Electric, Inc.*, 182 Wn.App. 436, 447, 332 P.3d 991 (2014). Consequently, Ocwen had the statutory responsibility under 12 U.S.C. §2605(k)(1)(C) to take timely action to respond to Mr. Jameson's June 16, 2014 letter and correct its failure to file and settle with the forced-placed insurer (QBE) the fire insurance claim for the Arlington residence as expeditiously as possible. Jim Jameson's June 16, 2014 letter to Ocwen was a proper qualified written request for information for purposes of 12 U.S.C. §2605(e)(1)(B)(i),(ii) that Ocwen failed to respond to substantively respond to in violation of 12 U.S.C. §2605(k)(1)(C).

Ocwen claims it substantively responded to Mr. Jameson's February 19, 2015 inquiry by sending him a "reinstatement quote" on February 26, 2015[10]. However, nothing in this "reinstatement quote" listed, described or explained how any insurance proceeds had been applied to what was owed under the *Loan*, which was the entire thrust of Mr. Jameson's inquiry.

12 U.S.C. §2605(f) states in pertinent part:

---

[9] RCW 11.04.015(2)(b). *Declaration of James J. Jameson*, ¶7 (07/05/2018).

[10] Dkt. #43, *Declaration of Kevin Flanagan*, ¶13, Ex. L (06/13/2018).

PLAINTIFF'S TRIAL BRIEF
No. 2:17-cv-00582-TSZ

Page 6

**Law Office of William E. Pierson, Jr. | PC**
The Delmar Building
108 S. Washington St., Suite 202
Seattle, WA 98104
Telephone: (206) 254-0915

**DAMAGES AND COSTS.** Whoever fails to comply with any provision of this section shall be liable to the borrower for each such failure in the following amounts:

(1) INDIVIDUALS. In the case of any action by an individual, an amount equal to the sum of—
    (A) any actual damages to the borrower as a result of the failure; and
    (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $2,000.

…

(3) COSTS. In addition to the amounts under paragraph (1) or (2), in the case of any successful action under this section, the costs of the action, together with any attorneys fees incurred in connection with such action as the court may determine to be reasonable under the circumstances.

## B. Washington Consumer Loan Act.

RCW 31.04.290(1)(c) states:

    (1) A residential mortgage loan servicer must comply with the following requirements:

    …

    (c) Any servicer that exercises the authority to collect escrow amounts on a residential mortgage loan held for the borrower for payment of insurance, taxes, and other charges with respect to the property must collect and make all such payments from the escrow account and ensure that no late penalties are assessed or other negative consequences result for the borrower.

    …

    (e) Promptly correct any errors and refund any fees assessed to the borrower resulting from the servicer's error.

WAC 208-620-900 states in pertinent part:

**Servicing residential mortgage loans—General requirement.**

    (1) Other applicable laws, regulations, and programs. A violation of an applicable state or federal law, regulation, or program is a violation of this act. In addition to complying with all other provisions of this act, you must comply with the following:
    …
    (3) Payment processing and fees.

PLAINTIFF'S TRIAL BRIEF
No. 2:17-cv-00582-TSZ
Page 7
**Law Office of William E. Pierson, Jr. | PC**
The Delmar Building
108 S. Washington St., Suite 202
Seattle, WA 98104
Telephone: (206) 254-0915

> ...
>
> (c) You must notify the borrower if a payment is received but not credited and instead placed in a suspense account. You must mail the notification to the borrower within ten business days by mail at the borrower's last known address. The notification must identify the reason the payment was not credited or treated as credited to the account, as well as any actions the borrower must take to make the residential mortgage loan current...

For the same reasons that Ocwen's failure to take timely action with respect to the Estate's attorney's requests on June 16, 2014 and February 15, 2015 to correct the errors associated with Ocwen's failure to ensure that the fire insurance claim was filed and settled as expeditiously as possible, thus violating 12 U.S.C. §2605(k)(1)(C), such conduct simultaneously violated RCW 31.04.290(1)(e) for failing to promptly correct errors attributable to Ocwen's actions in servicing[11] the *Loan*.

Ocwen exercised the authority to collect escrow amounts on the *Loan* for payment of insurance when it collected the insurance proceeds from QBE under the force-placed insurance policy for the Arlington residence and placed those proceeds in an escrow account where they remained from September 28, 2015 until August 15, 2016. The moment these insurance proceeds were placed in escrow by Ocwen, Ocwen was obligated to pay out these insurance proceeds from this escrow account to ensure that no negative consequences resulted to the Estate. RCW 31.04.290(1)(c). Ocwen did not. Ocwen was consequently obligated to notify the Estate why it had not done this. WAC 208-620-900(3)(c). Again, Ocwen did not do so.

Once these insurance proceeds were placed in escrow by Ocwen, Ocwen proceeded to also violate RCW 31.04.290(1)(c). Instead of immediately applying the insurance proceeds to what was owed under the *Loan*, Ocwen attempted to force the Estate to completely pay off the *Loan* in its entirety, contrary to the provisions in both the *Note* and *Deed of Trust*. Ocwen then proceeded with a foreclosure on the Arlington

---
[11] RCW 31.04.015(29).

PLAINTIFF'S TRIAL BRIEF
No. 2:17-cv-00582-TSZ

Page 8

**Law Office of William E. Pierson, Jr. | PC**
The Delmar Building
108 S. Washington St., Suite 202
Seattle, WA 98104
Telephone: (206) 254-0915

residence knowing full well that the Estate was entitled to have the insurance proceeds being held in escrow applied to the balance owing on the *Loan*. When the trustee under the *Deed of Trust* was apprised of the existence of these insurance proceeds being held in escrow, he immediately terminated the foreclosure process. All this while, Ocwen continued to charge interest, penalties and late fees to the *Loan* in the total sum of $11,729.48[12] on the grounds that the insurance proceeds paid out by QBE failed to completely pay off the *Loan*.

### C. Washington Consumer Protection Act.

RCW 31.04.208 states:

> The legislature finds that the practices governed by this chapter are matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW. Any violation of this chapter is not reasonable in relation to the development and preservation of business and is an unfair and deceptive act or practice and unfair method of competition in the conduct of trade or commerce in violation of RCW 19.86.020. Remedies provided by chapter 19.86 RCW are cumulative and not exclusive.

Ocwen's violations of RCW 31.04.290(1)(c) and (e) and WAC 208-620-900(3)(c) outlined above establish three of the five elements necessary to demonstrate a violation of the Consumer Protection Act, RCW 19.86.020: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; and (3) affecting the public interest. But for (proximate cause) this wrongful conduct, Ocwen charged interest, penalties and late fees to the *Loan* in the total sum of $11,729.48 (injury to a person's business or property) that otherwise would have been avoided if insurance proceeds held in escrow had been applied to the amount owing on the *Loan* in September 2015. The Estate has therefore satisfied all five elements necessary to establish Ocwen's violation of RCW 19.86.020 in this lawsuit.

---

[12] Dkt. #23: *Declaration of David A. Forte*, ¶25 (04/12/2018).

PLAINTIFF'S TRIAL BRIEF
No. 2:17-cv-00582-TSZ

Page 9

Law Office of William E. Pierson, Jr. | PC
The Delmar Building
108 S. Washington St., Suite 202
Seattle, WA  98104
Telephone:   (206) 254-0915

## IV. CONCLUSION

The Estate believes that when the jury has heard all of the evidence in this case, they will conclude Ocwen has violated the Real Estate Settlement Procedures Act, the Washington Consumer Loan Act and Washington Consumer Protection Act, and award the Estate the financial losses resulting from these wrongful acts: namely, the $80,000.00 Ocwen claims is still owing on the *Loan*.

DATED this 12th day of October, 2018.

> LAW OFFICE OF
> WILLIAM E. PIERSON, JR. | PC
>
> By _William Pierson_
> William E. Pierson, Jr., WSBA No. 13619
>
> Attorneys for Plaintiff
> ESTATE OF VERL A BRANTNER

PLAINTIFF'S TRIAL BRIEF
No. 2:17-cv-00582-TSZ

Page 10

**Law Office of William E. Pierson, Jr. | PC**
The Delmar Building
108 S. Washington St., Suite 202
Seattle, WA  98104
Telephone:   (206) 254-0915

# CERTIFICATE OF SERVICE

I hereby certify that on **October 12, 2018** I served a true copy of the foregoing **PLAINTIFF'S TRIAL BRIEF** addressed to the following person(s) at his/her last known address indicated below via the following delivery method(s):

**Attorneys for Defendant**
**OCWEN LOAN SERVICING, LLC**

| | |
|---|---|
| Cody M. Weston<br>PERKINS COIE LLP<br>1120 N.W. Couch St., Tenth Floor<br>Portland, OR 97209-4128 | ☒ CM/ECF Filing<br>☐ Legal Messenger<br>☐ E-mail Transmission<br>☐ U.S. Mail |
| Ofunne Edoziem<br>PERKINS COIE LLP<br>1888 Century Park East, Suite 1700<br>Los Angeles, CA 90067-1721 | ☒ CM/ECF Filing<br>☐ Legal Messenger<br>☐ E-mail Transmission<br>☐ U.S. Mail |
| Joshua S. Schaer<br>PERKINS COIE LLP<br>10885 NE 4th St., Suite 700<br>Bellevue, WA 98004 | ☒ CM/ECF Filing<br>☐ Legal Messenger<br>☐ E-mail Transmission<br>☐ U.S. Mail |

*/s/ William Pierson*
William E. Pierson, Jr.

PLAINTIFF'S TRIAL BRIEF
No. 2:17-cv-00582-TSZ

Page 11

**Law Office of William E. Pierson, Jr. | PC**
The Delmar Building
108 S. Washington St., Suite 202
Seattle, WA 98104
Telephone: (206) 254-0915