The Hon. Judge Thomas S. Zilly

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| ESTATE OF VERL A. BRANTNER, | Case No. 17-00582-TSZ |
| Plaintiff, | **TRIAL BRIEF OF DEFENDANT OCWEN LOAN SERVICING, LLC** |
| v. | |
| OCWEN LOAN SERVICING, LLC, | **Trial Date: October 29, 2018** |
| Defendant. | |

## I.   INTRODUCTION

Plaintiff presents three causes of action against Defendant Ocwen Loan Servicing, LLC ("Ocwen"), *i.e.*: 1) the Real Estate Settlement Procedures Act ("RESPA"), 2) the Washington Consumer Loan Act ("CLA"), and 3) the Washington Consumer Protection Act ("CPA"). However, Ocwen's conduct as loan servicer did not violate these laws.

Ocwen acted appropriately once notified of Plaintiff's insurance claim to QBE Insurance Corporation ("QBE"), Ocwen responded to inquiries by Plaintiff's counsel after necessary authorization was provided, and Ocwen applied the QBE-valued insurance proceeds to the loan per Plaintiff's instructions.  Applying the proceeds to the subject loan earlier in time would not have changed the fact that Plaintiff—as the Estate of the late borrower—remained in default.

In sum, Ocwen fulfilled its "standard servicer's duties" as outlined in RESPA and CFPB

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone: 425.635.1418

rules. Ocwen did not commit an error falling within the scope of the CLA. Finally, Ocwen did not engage in unfair or deceptive acts likely to affect the public, which also caused injury to Plaintiff; therefore, the CPA claim fails as well. Plaintiff should not prevail at trial.

## II.    RELEVANT FACTS

### A.    The Loan Documents.

On or about October 21, 2011, Verl Brantner executed a promissory note evidencing a $161,600.00 mortgage loan from Leader One Financial Corporation (the "Note"). Ex. 1.[1] Mr. Brantner secured repayment of the Note with real property commonly known as 20814 Jordan Rd., Arlington, WA 98223 (the "Property") through a recorded Deed of Trust. Ex. 2.

On or about February 16, 2013, Ocwen began servicing the loan. *See* Pretrial Order, Admitted Fact 3.

On or about October 21, 2013, Ocwen notified Mr. Brantner that lender-placed hazard insurance for the Property was due to expire and would be renewed after December 5, 2013 unless Mr. Brantner obtained his own insurance policy. Ex. 200.[2]

In November 2013, Mr. Brantner passed away. *See* Pretrial Order, Admitted Fact 4. No payments on the loan were made after that time, resulting in a default. *Id.*, Admitted Facts 5, 6.

### B.    Ocwen Obtains Hazard Insurance for the Property and Reaches Out to the Estate.

On or about December 5, 2013, a lender-placed insurance policy (the "Policy") with QBE took effect for one year; the maximum dwelling coverage was $156,033.00. *See* Pretrial Order, Admitted Facts 7-10. Both Ocwen and the Verl Brantner Estate (Plaintiff) were named as insured on the Policy. *Id.*

On or about January 14, 2014, Ocwen issued a Notice of Pre-Foreclosure Options to

---

[1] Exhibit numbers herein will be based on the parties' agreed Pretrial Order.
[2] Lender-placed insurance is a policy "placed by a bank or mortgage servicer on a home when the homeowners' own property insurance may have lapsed or where the bank deems the homeowners' insurance insufficient." *See* https://www.naic.org/cipr_topics/topic_lender_placed_insurance.htm, National Association of Insurance Commissioners, updated Aug. 2, 2018.

TRIAL BRIEF OF DEFENDANT
OCWEN LOAN SERVICING, LLC
PAGE 2 OF 18 – CASE NO. 17-00582-TSZ
141421062.1

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone:  425.635.1418

Plaintiff in accordance with RCW 61.24.031, offering a meeting to discuss alternatives to foreclosure of the Property. Ex. 202. No meeting was sought in response. Ex. 24.

On or about January 29, 2014, Ocwen sent Plaintiff another letter stating that a face-to-face meeting could be requested. Ex. 203. Again, no such request was made. Ex. 24.

C. Fire Damages the Property and Ocwen Requests Authorization to Discuss the Loan Account.

On March 23, 2014, the Property was damaged by a fire. *See* Pretrial Order, Admitted Fact 11. After the fire, neither Plaintiff nor its representative immediately filed an insurance claim with QBE.

On or about April 18, 2014, Ocwen sent Plaintiff a delinquency notice, advising the loan was $7,899.96 in arrears. Ex. 204. This letter contained an address in West Palm Beach, FL for Plaintiff to make a Qualified Written Request. *Id.*

On or about May 19, 2014, Ocwen sent Plaintiff another delinquency notice, advising the loan was $9,181.37 in arrears. Ex. 205. This letter again contained an address in West Palm Beach, FL for Plaintiff to make a Qualified Written Request. *Id.*

On or about June 16, 2014, attorney James Jameson sent a letter to Ocwen addressed to a P.O. Box in Waterloo, IA to determine if insurance proceeds were paid to Ocwen for the fire. Ex. 16. On or about June 25, 2014, Ocwen received this letter. *Id.*

On or about June 18, 2014, Ocwen sent Plaintiff another delinquency notice, advising the loan was $10,615.71 in arrears. Ex. 206. This letter again contained an address in West Palm Beach, FL for Plaintiff to make a Qualified Written Request. *Id.*

On or about July 1, 2014, Ocwen sent a letter to Mr. Jameson noting that his request had been submitted for processing, but that Ocwen could not communicate with Mr. Jameson on matters concerning the Loan because he was not an authorized third party on the mortgage account. Ex. 19.[3] To comply with privacy laws and to ensure it did not disclose confidential

---

[3] That same date, Ocwen sent a similar notice to Plaintiff at an address in Stanwood, WA. Ex. 20.

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone: 425.635.1418

information to unauthorized parties, Ocwen requested that Mr. Jameson first obtain written permission from the executor of the Estate before it could reveal information regarding the loan. *Id.*

On or about July 10, 2014, Mr. Jameson provided a third-party authorization form to Ocwen that was executed by Irene Brantner. Ex. 21.

On or about July 15, 2014, Ocwen sent Plaintiff a follow-up letter advising that the authorization form was incomplete or insufficiently filled out. Ex. 23. Despite this letter, seven months passed without correction of the authorization form or any further contact from Mr. Jameson or the Estate. In those seven months, neither Plaintiff nor its representative formally submitted an insurance claim to QBE regarding the fire. *See* Pretrial Order, Admitted Fact 15.

On or about July 18, 2014, Ocwen sent Plaintiff another delinquency notice, advising the loan was $12,015.05 in arrears. Ex. 208. This letter again contained an address in West Palm Beach, FL for Plaintiff to make a Qualified Written Request. *Id.*

On or about August 18, 2014, Ocwen sent Plaintiff another delinquency notice, advising the loan was $13,414.39 in arrears. Ex. 209. This letter again contained an address in West Palm Beach, FL for Plaintiff to make a Qualified Written Request. *Id.*

On or about September 15, 2014, Ocwen issued a new Notice of Pre-Foreclosure Options Letter to Plaintiff in accordance with RCW 61.24.031, offering a meeting to discuss alternatives to foreclosure of the Property. Ex. 210. No meeting was sought in response. Ex. 24.

On or about October 18, 2014, Ocwen sent Plaintiff another delinquency notice, advising the loan was $16,263.56 in arrears. Ex. 211. This letter again contained an address in West Palm Beach, FL for Plaintiff to make a Qualified Written Request. *Id.*

On or about November 18, 2014, Ocwen sent Plaintiff another delinquency notice, advising the loan was $17,669.55 in arrears. Ex. 212. This letter again contained an address in West Palm Beach, FL for Plaintiff to make a Qualified Written Request. *Id.*

TRIAL BRIEF OF DEFENDANT
OCWEN LOAN SERVICING, LLC
PAGE 4 OF 18 – CASE NO. 17-00582-TSZ
141421062.1

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone: 425.635.1418

On or about December 19, 2014, Ocwen sent Plaintiff another delinquency notice, advising the loan was $19,040.14 in arrears. Ex. 213. This letter again contained an address in West Palm Beach, FL for Plaintiff to make a Qualified Written Request. *Id*.

Through December 2014, monthly mortgage statements sent to Plaintiff showed the amount due on the loan with no payments applied from insurance proceeds. Ex. 221. Each mortgage statement sent to Plaintiff contained information regarding the principal balance owed and amounts due on the loan. *Id*.

On or about January 27, 2015, Ocwen sent Plaintiff another delinquency notice. Ex. 214.

D.   Ocwen Receives Authorization to Discuss the Loan Account and Plaintiff's Counsel Belatedly Initiates an Insurance Claim.

On or about February 19, 2015, Mr. Jameson sent Ocwen a letter to a P.O. Box in San Antonio, TX; this was the first time that Mr. Jameson supplied Ocwen with Letters of Administration for Irene Brantner related to the Estate. Ex. 25. On or about February 24, 2015, Ocwen received this letter. *Id*.

On or about February 24, 2015, Ocwen sent Plaintiff another delinquency notice. Ex. 215.

On or about February 26, 2015, after adding Mr. Jameson as an authorized third party to the loan account, Ocwen sent a reinstatement quote to Mr. Jameson indicating that the loan was not paid off. Ex. 27.

On or about February 27, 2015, Ocwen sent two letters to Plaintiff at its Stanwood, WA address acknowledging receipt of Mr. Jameson's February 19, 2015 letter and advising that any question regarding hazard insurance claims must be sent to Ocwen's Loss Draft department. Ex. 216.

On or about March 11, 2015, Mr. Jameson contacted QBE to inform it of the March 2014 fire. *See* Pretrial Order, Admitted Fact 15. QBE as the insurer, and not Ocwen, processed Mr. Jameson's insurance claim. *Id*., Admitted Fact 20.

TRIAL BRIEF OF DEFENDANT
OCWEN LOAN SERVICING, LLC
PAGE 5 OF 18 – CASE NO. 17-00582-TSZ
141421062.1

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone: 425.635.1418

On or about April 3, 2015, Ocwen issued a new Notice of Pre-Foreclosure Options Letter to Plaintiff in accordance with RCW 61.24.031, offering a meeting to discuss alternatives to foreclosure of the Property.  Ex. 217.

On or about April 22, 2015, Mr. Jameson spoke with an Ocwen representative by phone and specifically declined an in-person meeting.  Ex. 24.  Irene Brantner also never requested a meeting with Ocwen and never sought loss mitigation assistance.  *Id*.

On or about June 25, 2015, Ocwen sent Mr. Jameson a payoff quote, reflecting the total loan amount due as $178,708.13.  Ex. 218.

On or about August 3, 2015, Ocwen sent Plaintiff a payoff quote, reflecting the total loan amount due as $179,944.95.  Ex. 219.

E.    The Insurance Company Evaluates the Claim and Tenders it to Ocwen.

On or about September 10, 2015, QBE completed its valuation of proceeds to be paid out due to the property fire.  Ex. 220.  QBE determined that $132,348.33 was an appropriate amount to be paid for the damage.  *Id*.

On or about September 25, 2015, Ocwen received the $132,348.33 insurance payment from QBE.  *See* Pretrial Order, Admitted Fact 22.

On or about September 28, 2015, Ocwen sent Plaintiff another payoff quote, reflecting the total loan amount due as $182,955.58.  Ex. 222.

On or about October 13, 2015, Ocwen sent Plaintiff a default notice, advising how to reinstate the loan and/or obtain other assistance to bring the loan current.  Ex. 223.

On or about October 27, 2015, Ocwen sent Plaintiff a pre-foreclosure referral letter.  Ex. 224.

F.    Ocwen Obtains Authority to Apply the Insurance Funds to the Loan.

On or about December 21, 2015, Ocwen provided Plaintiff with a partial payoff affidavit, which authorized Ocwen to apply $132,348.33 in insurance proceeds to the loan balance owed.

TRIAL BRIEF OF DEFENDANT
OCWEN LOAN SERVICING, LLC
PAGE 6 OF 18 – CASE NO. 17-00582-TSZ
141421062.1

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone:  425.635.1418

Ex. 39.

The affidavit stated that Ocwen had received $132,348.33, but that these funds were "not sufficient to pay off the aforementioned loan, and [the Estate] would be responsible for any/all additional funds needed." *Id*. The affidavit further stated that the executor understood that "the additional funds in the amount of $29,251.67 must be submitted to [Ocwen's] Insurance Loss Department along with this completed affidavit in order to pay off and satisfy the loan." *Id*.

On or about January 20, 2016, Irene Brantner signed this affidavit. Ex. 41. However, neither Plaintiff nor its representative sent Ocwen the stated funds necessary to pay off the loan.

G.    The Loan Remains in Default.

In August 2016, having not received any further payments from Plaintiff or its representative, Ocwen applied the $132,348.33 in insurance proceeds to the delinquent loan. Ex. 226. Because the loan default was not cured, Ocwen commenced foreclosure proceedings.

As of August 16, 2018, $80,626.40 remained due and owing on the loan, and that figure continues to increase as interest and other charges accrue. *See* Pretrial Order, Admitted Fact 27.

### III.    LEGAL ANALYSIS

A.    PLAINTIFF'S RESPA CLAIM

Plaintiff first alleges a violation of 12 U.S.C. § 2605(k)(1)(C). Am. Compl., ¶ 4.2.[4] This subsection creates liability for failing to take "timely action to respond to a borrower's requests to correct errors relating to allocation of payments, final balances for purposes of paying off the loan, or avoiding foreclosure, or other standard servicer's duties."

---

[4] Plaintiff does not plead a violation of § 2605(e), relating to "qualified written requests." The type of requests identified in § 2605 (k)(1)(C) are different. *See, e.g.*, Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 2013 WL 525347, 78 FR 10696-01 (Feb. 14, 2013) ("The Bureau proposed to create a unified requirement for servicers to respond to notices of error and information requests provided by borrowers, without regard to whether the notices or requests constituted qualified written requests…. [U]nlike section 6(e) of RESPA, which sets forth specific rules for submission of and response to "qualified written requests," section 6(k)(1)(C) of RESPA does not specify that borrowers' requests to correct errors must be submitted in any particular format to trigger the new prohibition.").

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone:  425.635.1418

The scope of error resolution includes various categories such as the failure to accept, apply, or credit a borrower's loan payment, the failure to pay amounts from escrow, the failure to provide an accurate payoff balance, the failure to provide information regarding loss mitigation options, the failure to timely transfer information to a subsequent servicer, the imposition of an unreasonable fee or charge, a violation of loss mitigation procedures found in 12 C.F.R. § 1024.41, and "any other error relating to the servicing of a borrower's mortgage loan." 12 C.F.R. § 1024.35(b)(1)-(11); *accord Walker v. Branch Banking & Tr. Co.*, 237 F. Supp. 3d 1326, 1334 (S.D. Fla. 2017) ("*an unadorned request for a statement of payments made toward a loan is not an allegation of a servicing error*" is insufficient for a RESPA cause of action.) (Emphasis in original, citations omitted).

With respect to hazard insurance, the Consumer Financial Protection Bureau ("CFPB") has articulated that "standard servicer duties" include a requirement to "*monitor coverage* for insurance." *See* Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X), 2013 WL 525347, 78 FR 10696-01 (Feb. 14, 2013) (emphasis added).[5]

Contrary to what Plaintiff might contend, there is no requirement found in either RESPA or the CFPB rules that links "standard servicer duties" with a FHA handbook. Indeed, courts routinely hold that borrowers lack standing to enforce such handbook provisions. *See, e.g.*, *Roberts v. Cameron-Brown Co.*, 556 F.2d 356, 360 (5th Cir. 1977) (holding there is no private right of action to enforce HUD Handbook; the regulations "deal only with the relations between the mortgagee and the government, and give the mortgagor no claim to duty owed nor remedy for failure to follow."); *Vega v. Ocwen Fin. Corp.*, 2015 WL 1383241, at *14 (C.D. Cal. Mar. 24, 2015) (borrowers lacked standing to sue to enforce Fannie Mae and Freddie Mac servicing

---

[5] There is also a requirement to "process and pursue mortgage insurance claims," but mortgage insurance is not the same as hazard insurance, and not an issue here. *See* https://www.consumerfinance.gov/ask-cfpb/what-is-mortgage-insurance-and-how-does-it-work-en-1953/, "What is Mortgage Insurance and How Does It Work?" ("Mortgage insurance, no matter what kind, protects the lender, not you, in the event that you fall behind on your payments.").

guidelines); *Santos v. Reverse Mortg. Solutions, Inc.*, 2013 WL 5568384, at \*6 (N.D. Cal. Oct. 9, 2013) (holding the HUD Handbook for reverse mortgages does not create a private right of action).[6]

When a request to correct an error is made, a servicer can require "purported agents to provide documentation from the borrower stating that the purported agent is acting on the borrower's behalf." *Id.* "Upon receipt of such documentation, the servicer shall treat a notice of error as having been submitted by the borrower." *Id.*

A response to a general request for the correction of an error must be made not later than 30 days after receipt. 12 C.F.R. § 1024.35(e)(3)(i)(C). A servicer who takes timely action to respond should not be liable for a violation of 12 U.S.C. § 2605(k)(1)(C). *See Christenson v. CitiMortgage, Inc.*, 255 F. Supp. 3d 1099, 1106 (D. Colo. 2017) (declining to read "unwritten standards" into the subsection beyond providing an actual response).

Here, Plaintiff contends that Ocwen should have: a) pursued an insurance claim for vandalism to the Property in September 2013, b) filed an insurance claim for the March 2014 fire damage to the Property, c) applied the insurance proceeds received from QBE in a more expedient manner, d) valued the Property up to the maximum Policy limit of $156,033.00, and e) notified Plaintiff of applying the insurance proceeds to the loan balance, which "destroyed [Plaintiff's] right to contest Ocwen's valuation of the damages resulting from the fire" under the Policy. Am. Compl., ¶ 4.2. None of these allegations, however, constitute requests to correct errors within the scope of 12 U.S.C. § 2605(k)(1)(C), or the implementing regulation found in 12 C.F.R. § 1024.35(b)(1)-(11) as interpreted by the CFPB.

With respect to Mr. Jameson's correspondence—which is not specifically pled as a basis for Plaintiff's RESPA claim—a June 16, 2014 letter to Ocwen initially asked "what balance, if any, remains after payment of insurance proceeds on this loan." Ex. 16. On or about July 1,

---

[6] The FHA is part of HUD. *See* https://www.hud.gov/program_offices/housing/fhahistory.

TRIAL BRIEF OF DEFENDANT
OCWEN LOAN SERVICING, LLC
PAGE 9 OF 18 – CASE NO. 17-00582-TSZ
141421062.1

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone: 425.635.1418

2014, and consistent with the CFPB's rules, Ocwen sought "permission from the executor of the estate" before it could respond to Mr. Jameson. Exs. 19, 20. That same date, Ocwen also advised Plaintiff that authorization was necessary for a third-party to "obtain information about the account." Ex. 207.

On or about July 15, 2014, Ocwen advised that the authorization form, signed by Irene Brantner, could not be accepted because Mr. Jameson failed to include evidence showing that she was authorized to execute the form on behalf of the Estate. Ex. 23. In fact, Irene Brantner was not so authorized because at the time Irene Brantner executed the authorization form, she had declined formally to serve as the Estate's representative.[7] Rather, Mrs. Brantner's other son, Jess Brantner, was the appointed representative of the Estate.

It was not until on or about February 19, 2015 that Mr. Jameson finally supplied Ocwen with Letters of Administration for Irene Brantner related to the Estate. Ex. 25. Again, Mr. Jameson asked "what the remaining loan balance is, if anything, so it may be paid off." *Id.* Ocwen added Mr. Jameson as an authorized third party; then on or about February 26, 2015, just seven days later, Ocwen sent him a quote on the loan account. Ex. 27.

Plaintiff does not allege that Ocwen failed to *monitor* insurance coverage. Rather, Plaintiff's claim enumerates other actions that simply do not equate to violations of RESPA as pled. To the extent that Mr. Jameson sent correspondence inquiring about insurance proceeds and the loan balance, and to the extent that the same might be construed as requests for error correction, Ocwen acted appropriately to obtain authorization from Mr. Jameson and then timely responded to his questions. Plaintiff will be unable to prove a violation of 12 U.S.C. § 2605(k)(1)(C) at trial.

---

[7] Ocwen expects Mrs. Brantner to testify at trial to this fact, consistent with her deposition.

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone: 425.635.1418

## B. PLAINTIFF'S CLA CLAIM

Plaintiff next alleges violations of RCW 31.04.290(1)(c)&(e), along with "WAC 208-620-900(1)(c)." Am. Compl., ¶ 4.5.[8]  The statute requires that:

> [a]ny servicer that exercises the authority to collect escrow amounts on a residential mortgage loan held for the borrower for payment of insurance, taxes, and other charges with respect to the property must collect and make all such payments from the escrow account and ensure that no late penalties are assessed or other negative consequences result for the borrower.

RCW 31.04.290(1)(c).  In addition, a mortgage servicer shall "[p]romptly correct any errors and refund any fees assessed to the borrower resulting from the servicer's error."  RCW 31.04.290(1)(e).

The CLA defines a borrower as:

> [a]ny person who consults with or retains a licensee or person subject to this chapter in an effort *to obtain*, or who seeks information about *obtaining a loan*, regardless of whether that person actually obtains such a loan.  'Borrower' includes a person who consults with or retains a licensee or person subject to this chapter *in an effort to obtain*, or who seeks information about obtaining a residential *mortgage loan modification*, regardless of whether that person actually obtains a residential mortgage loan modification.

RCW 31.04.015(4) (emphasis added).

In this case, Plaintiff's CLA claim is predicated on the same conduct identified in its RESPA claim, *i.e.*, failing to pursue insurance relating to vandalism, failing to pursue insurance for the fire, failing to pay out the maximum amount under the Policy, "destroying" Plaintiff's supposed right to contest the insurance proceeds amount, and causing the insurance claim

---

[8] There is no subsection (1)(c) to WAC 208-620-900. Plaintiff did not plead a violation of subsection (3)(c) in any of its complaints. Thus, Plaintiff should not be allowed to now proceed with a claim for violation of subsection (3)(c) as it would raise new theories on the eve of trial. However, if this Court permits Plaintiff to suddenly claim a violation under subsection (3)(c), loan "payments" are not in question.  *See* WAC 208-620-011(5)(a)(i) (servicing a loan means collecting "payments" of "principal, interest, escrow amounts, and other amounts due;" insurance proceeds are not included as "payments.");  *see also* Ex. 2, ¶ 4 (Deed of Trust distinguishes between borrower's payments and insurance proceeds).  Regardless, whether Plaintiff has standing to enforce WAC 208-620-900 at all is the subject of a Motion in Limine and the issue will not be repeated here in the interest of economy.  *See* Dkt. No. 53 (Ocwen Motions in Limine).

TRIAL BRIEF OF DEFENDANT
OCWEN LOAN SERVICING, LLC
PAGE 11 OF 18 – CASE NO. 17-00582-TSZ
141421062.1

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone:  425.635.1418

process to continue for an excessive length of time.  Am. Compl., ¶ 4.5.  None of these items, however, give rise to CLA liability.

First, Neither Plaintiff nor Mr. Jameson communicated with Ocwen about obtaining a loan or loan modification.  Thus, they cannot be considered "borrowers" for purposes of the CLA.  RCW 31.04.015(4).  *Cf. Arneson v. Nordlund*, 186 Wn. App. 1037 (2015) (unpublished) (analyzing the term "borrower" related to a trust involved in a loan *origination* transaction).

Second, Plaintiff does not allege that Ocwen failed to timely pay property taxes.  Plaintiff also does not allege Ocwen failed to timely pay the insurance premium for the Policy.  And Plaintiff does not allege that it suffered late penalties due to Ocwen's failure to timely make these types of escrow payments.  RCW 31.04.290(1)(c) is inapplicable.

Third, Plaintiff will be unable to establish that Ocwen did not correct a "servicer's error" per RCW 31.04.290(1)(e).  While the statute lacks a definition for this term, 12 C.F.R. § 1024.35(b)(1)-(11) and CFPB rules stated above offer guidance regarding what "errors" a servicer must address.  Like with Plaintiff's RESPA claim, all the acts complained of fall outside the scope of covered events.

Consequently, Plaintiff cannot prevail on its CLA claim at trial.

C.     PLAINTIFF'S CPA CLAIM

Plaintiff last alleges a violation of RCW 19.86.020.  Am. Compl., ¶ 4.7.[9]  Under the CPA, Plaintiff must establish (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury to a person's business or property, and (5) causation [between the unfair or deceptive act and the injury].  *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 37, 204 P.3d 885 (2009) (internal citations omitted); *Hangman Ridge*

---

[9] Because Plaintiff relies on "conduct set out in paragraph 4.2"—the RESPA claim—as being unfair and deceptive, it is unclear if the citation to RCW 31.04.208 in Plaintiff's Amended Complaint means this cause of action is only pled as a *per se* CPA violation under that statute.  Am. Compl., ¶ 4.7.  If so, then the CLA analysis briefed above will resolve the CPA claim as well.  If not, then Plaintiff must establish each CPA element as articulated in case law.

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone:  425.635.1418

*Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 719 P.2d 531 (1986).  The failure to meet any one of these elements is fatal to the claim.  *Sorrel v. Eagle Healthcare*, 110 Wn. App. 290, 298, 38 P.3d 1024 (2002).

The CPA does not define what qualifies as an "unfair or deceptive act or practice." *Leingang v. Pierce Cty. Med. Bureau*, 131 Wn.2d 133, 150, 930 P.2d 288 (1997).  Nonetheless, to establish an unfair or deceptive act, there must be shown a real and substantial potential for repetition, as opposed to a hypothetical possibility of an isolated act being repeated.  *See Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 200 P.3d 695 (2009); *accord Klem v. Wash. Mut. Bank*, 176 Wn.2d 771, 787, 295 P.3d 1179 (2013), *citing* 15 U.S.C. § 45(n).

Even if Plaintiff could hypothetically show the existence of an unfair or deceptive act, it must further prove that Ocwen's conduct had the capacity to injure other persons. *See Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778 (1986); *see also* RCW 19.86.093 (codifying the element).

"[T]he public interest in a private dispute is not inherent." *Tran v. Bank of Am, N.A..*, 2013 WL 64770, at *5 (W.D. Wash. Jan. 4, 2013); *see also McCrorey v. Fed. Nat. Mortg. Ass'n*, 2013 WL 681208, at *3 (W.D. Wash. Feb. 25, 2013) ("The purpose of the CPA is to protect consumers from harmful practices, which is why plaintiff must allege an actual or potential impact on the general public, not merely a private wrong."); *Kelly v. Cavalry Portfolio Servs. LLC*, 2016 WL 7468227, at *4 n. 4 (Wash. Ct. App. Dec. 28, 2016, unpublished) (rejecting CPA claim partly due to a lack of injuring a "substantial portion of the population."); *Brown ex rel. Richards v. Brown*, 157 Wn. App. 803, 816, 239 P.2d 602 (2010) (CPA claim defeated because of no evidence that Wells Fargo's actions had "the capacity to deceive a large portion of the public.").  A meaningless recitation of the public interest element is ineffective where the specific conduct at issue is unique to the individual plaintiff.  *See, e.g., Bavand v. OneWest Bank, FSB,* 196 Wn. App. 813, 395 P.3d 233 (2016) (a failure to establish facts that "have been

TRIAL BRIEF OF DEFENDANT
OCWEN LOAN SERVICING, LLC
PAGE 13 OF 18 – CASE NO. 17-00582-TSZ
141421062.1

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone: 425.635.1418

replicated elsewhere" means "there is no showing that others have been or will be injured in the same fashion.  *Bavand* fails to show a public interest."); *cf. State v. LA Inv'rs,* -- Wn. App. --, 2018 WL 832081 (2018) (affirming a broad public interest impact when a mailer was sent to "over 200,000 consumers, generating over 9,000 paid responses.").

Additionally, an injury to the claimant's business or property must be proven. *Hangman Ridge*, *supra.* at 792; *see also Ambach v. French*, 167 Wn.2d 167, 216 P.3d 405 (2009); RCW 19.86.090 (an award under the CPA is strictly limited to damage "in… business or property…."). Compensable injuries do not include "mental distress, embarrassment, and inconvenience." *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 431, 334 P.3d 529 (2014); *Wash. State Physicians Ins. Exch. & Ass'n v. Fisons*, 122 Wn.2d 299, 858 P.2d 1054 (1993) (lost wages or personal injuries, including pain and suffering, are not compensable under the CPA); *see also Demopolis v. Galvin*, 57 Wn. App. 47, 55-56, 786 P.2d 804 (1990) (litigation expenses are not an "injury" under the CPA).

Finally, Plaintiff is limited to recovery for injuries that it can demonstrate were proximately caused by unfair or deceptive practices.  *See*, *e.g.*, *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 82, 170 P.3d 10 (2007) (A plaintiff must prove that the "injury complained of… would not have happened" if not for defendant's acts). Consequently, without a causal link between the alleged deceptive act or practice and an injury, no CPA liability exists.  *See*, *e.g.*, *Hangman Ridge*, *supra.* at 793; *Panag*, *supra.* at 64 (if an expense would have been incurred regardless of whether a violation existed, causation is not established).

Here, Plaintiff's CPA cause of action fails for multiple reasons.

With respect to the unfair or deceptive act element, Plaintiff cannot show that Ocwen had an obligation to file an insurance claim on its behalf, let alone when Ocwen should have done

TRIAL BRIEF OF DEFENDANT
OCWEN LOAN SERVICING, LLC
PAGE 14 OF 18 – CASE NO. 17-00582-TSZ
141421062.1

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone:  425.635.1418

so.[10]  In fact, the Deed of Trust required the Borrower, not Ocwen, to promptly give primary

notice of a claimed loss.  Ex. 2, ¶ 4 ("In the event of loss, Borrower shall give Lender immediate

notice by mail.  Lender *may* make proof of loss if not made promptly by Borrower.")  (Emphasis

added).  Further, as indicated by Mr. Jameson's June 2014 letter, Plaintiff became aware of the

fire shortly after its occurrence.  Ex. 16.  And yet, Plaintiff's counsel delayed in submitting a

claim to QBE until one year later.  *See* Pretrial Order, Admitted Fact 15.  Plaintiff improvidently

seeks to transfer liability for its own dilatory behavior onto Ocwen.

Plaintiff also seeks to hold Ocwen liable for allegedly undervaluing the loss at a number

below the Policy limit.  Am. Compl., ¶ 4.2(d).  But *QBE* was the insurer who determined

valuation.  *See* Pretrial Order, Admitted Facts 20, 21.

Contrary to Plaintiff's allegations, Ocwen gave it notice that the insurance proceeds

would be applied to the loan balance.  The payoff affidavit provided to Plaintiff states, "I

authorize Ocwen Loan Servicing LLC to apply Hazard Suspense funds (Insurance Claim funds)

in the amount of $132,348.33 toward the payoff on the loan number referenced above."  Ex. 41.

After Plaintiff failed to tender the remaining payoff amount, Ocwen then applied the insurance

funds to the account.  Ocwen simply did not hinder any claimed "right" the Estate may have

possessed to contest QBE's valuation.[11]  The evidence reveals Ocwen did not act in an unfair or

deceptive manner.

With respect to the public interest element, each allegation presented is unique to Plaintiff

and no one else (or even no other legal entity).  This case is more like *Bavand*, *supra.*, involving

occurrences that cannot be proven to repeat, and less like *L.A. Inv.'s*, *supra.*, involving a mass

mailing and significant public impact.  The CPA is intended to allow plaintiffs to prosecute

---

[10] Plaintiff was an additional named insured on the Policy.  Ex. 63.
[11] Ocwen expects Mrs. Brantner to testify, consistent with her deposition, that Ocwen did not bar Plaintiff from contesting the insurance payout.

TRIAL BRIEF OF DEFENDANT
OCWEN LOAN SERVICING, LLC
PAGE 15 OF 18 – CASE NO. 17-00582-TSZ
141421062.1

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone:  425.635.1418

misconduct as if they are private attorneys general; it is not meant for the imposition of liability where the acts at issue are unlikely to have occurred elsewhere or in the future.

With respect to injury and causation, Plaintiff's Amended Complaint completely omits these essential elements. Am. Compl., ¶ 4.7. This deficiency may be inadvertent but is nonetheless prescient—Plaintiff did not suffer harm traceable to Ocwen. Plaintiff did not make loan payments after November 2013. Plaintiff did not report the fire loss. Plaintiff waited many months to supply proof of authority to communicate about the loan. Plaintiff did not accept offers to discuss loss mitigation assistance and resolve the situation. Plaintiff's counsel inquired about the balance to be paid off, and then took no action to achieve that outcome.

Given these facts, Plaintiff will not establish its CPA claim at trial.

## IV.    CONCLUSION

Ocwen maintains that after all testimony and documentary evidence is submitted for consideration to the jury and/or the Court, a judgment should be entered in Ocwen's favor on Plaintiff's claims.

TRIAL BRIEF OF DEFENDANT
OCWEN LOAN SERVICING, LLC
PAGE 16 OF 18 – CASE NO. 17-00582-TSZ
141421062.1

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone: 425.635.1418

DATED: October 12, 2018

By: _s/ Ofunne N. Edoziem_

Ofunne N. Edoziem, *admitted pro hac vice*
**Perkins Coie LLP**
1888 Century Park E., Suite 1700
Los Angeles, CA  90067-1721
Telephone:  310.788.9900
Facsimile:  310.788.3399
Email:  OEdoziem@perkinscoie.com


By: _s/ Joshua S. Schaer_

Joshua S. Schaer, WSBA No. 31491
**Perkins Coie LLP**
10885 N.E. 4th St., Ste. 700
Bellevue, WA 98004
Telephone:  425.635.1418
Fascimile:  425.635.2418
Email:  JSchaer@perkinscoie.com

Attorneys for Defendant
Ocwen Loan Servicing, LLC

TRIAL BRIEF OF DEFENDANT
OCWEN LOAN SERVICING, LLC
PAGE 17 OF 18 – CASE NO. 17-00582-TSZ
141421062.1

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone:  425.635.1418

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

# CERTIFICATE OF SERVICE

I hereby certify that on October 12, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the email addresses indicated on the Court's Electronic Mail Notice List.

DATED: October 12, 2018

By: *s/ Joshua S. Schaer*
Joshua S. Schaer, WSBA No. 31491
**Perkins Coie LLP**
10885 N.E. 4th St., Ste. 700
Bellevue, WA 98004
Telephone: 425.635.1418
Fascimile: 425.635.2418
Email: JSchaer@perkinscoie.com

Attorneys for Defendant
Ocwen Loan Servicing, LLC

TRIAL BRIEF OF DEFENDANT
OCWEN LOAN SERVICING, LLC
PAGE 18 OF 18 – CASE NO. 17-00582-TSZ
141421062.1

**Perkins Coie LLP**
10885 NE 4th St., Suite 700
Bellevue, WA 98004
Phone: 425.635.1418